IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

MICHAEL BRISCO,           )
TDCJ No. 1074236,         )
        Plaintiff,        )
                          )
v.                        )     Civil No. 7:09-CV-169-O
                          )
DAVID E. POTTER, *et al.*,)
        Defendants.      )

MEMORANDUM OPINION AND ORDER

Came on this day to be considered Defendants' Motion for Summary Judgment and Brief in Support and the Court finds and orders as follows:[1]

This is an action brought pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("the ADA") by an inmate confined in the James V. Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas. Defendants are Dr. David Potter, Nurse Amy Newman and Physician's Assistant John Wilson (deceased). Amended Complaint ¶ IV.B. At the time of the events giving rise to this lawsuit, Defendants were medical care providers at the Allred Unit. *Id.*

Plaintiff claims that he was denied medical care for a heart attack and for his disability of having one leg shorter than the other. Amended Complaint pp. 3-5. Brisco alleges that he was denied medical care for purposes of retaliation and racial discrimination. *Id.*

In order to state a colorable claim for the denial of medical care under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate

---

[1] Plaintiff has not filed a response to Defendants' motion for summary judgment.

indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Defendants concede that Plaintiff suffered a heart attack and that he has one leg shorter than the other. Brief in Support of Defendants' Motion for Summary Judgment at pp. 8-9 (hereinafter "Defendants' Brief at p.___."). However, they argue, *inter alia*, that they have not been deliberately indifferent to Plaintiff's need for care and that they are entitled to qualified immunity from suit. Defendants' Brief at pp. 12-14 & 16. They further argue that Brisco is not entitled to relief under the ADA. *Id.* at pp. 16-17.

A review of the summary judgment evidence submitted by Defendants reflects that Plaintiff was seen by medical care providers at the Allred Unit on numerous occasions. Defendants' Brief, Exhibits A, B & C. The Court has reviewed Plaintiff's medical records and the affidavits submitted

to the Court by Defendants. A summary of Plaintiff's medical records for the time period relevant to the issues in this lawsuit is aptly set forth by Defendants as follows:

10-30-08    Dr. Potter conducted a sick call exam of Brisco after he complained of back pain. Dr. Potter noticed that Briscoe had heavy dandruff. Briscoe was on 9 medications: Ranitidine, Albuterol inhaler, HCTZ, Pravastatin, Docusate Calcium, Simethicone, Clotrimazole, ECASA 81 mg, Amlodipine. Dr. Potter prescribed 800 mg of Ibuprofen, 150 mg of Ranitidine, and dandruff shampoo from the commissary. He also added restrictions of no walking on wet or uneven surfaces. Exhibit A, 29-32.

11-21-08    Brisco was seen in the ENT (Ears, Nose, Throat) Clinic in Lubbock at the Montford Unit for his complaints of chronic hoarseness. The specialist there recommended adding Flonase to his medicine regimen to improve his complaint of hoarseness. He also recommended Brisco lose weight and documented that he would consider a septoplasty or sleep study. Exhibit A, App. 34; Exhibit B, App. 53.

12-2-08     Briscoe complained of stomach pains. P.A. Wilson had x-rays done and concluded that Briscoe had a ventral hernia. Wilson made a referral for general surgery. Wilson also prescribed Flonase for Brisco as recommended. Exhibit A, App. 27-28, 33; Exhibit B, App. 53.

12-26-08    Brisco informed the nurse of chest pains (4 on a scale of 1 to 10). P.A. Wilson ordered an EKG and told staff to notify the physician immediately. Exhibit A, App. 47-48.

12-29-08    Dr. Potter ordered the EKG, which was normal. Exhibit A, App. 7, 26.

1-8-09      Brisco complained of backpain, corns on feet, and right leg 1 inch shorter than left. P.A. Wilson ordered medical shoes for Brisco that were size 10 with 1 inch lift on right. He also prescribed acid pads for the callouses, 4 each for 7 days. Wilson also requested a CT of the abdomen to rule out a possible mass. Exhibit A, App. 25; Exhibit B, App. 53.

1-15-09     Brisco refused to allow a CT scan to evaluate his complaints of an abdominal mass. He stated he wanted to wait until he was released from prison to have the testing. Exhibit A, App. 5, 24; Exhibit B, App. 53-54.

2-9-09      Brisco complained of foot and joint pain. P.A. Wilson ordered C-Reactive Protein and uric acid. Exhibit A, App. 23.

2-12-09     Brisco refused to attend his follow-up appointment with the specialist at the ENT Clinic. He said he had already been seen and did not need to go back. Exhibit A, App. 4, 22; Exhibit B, App. 54.

| | |
|---|---|
| 2-13-09 | P.A. Wilson notes on examining Brisco, that Briscoe had possible arthritic process in feet. Wilson prescribed CTM, 4 mg. Exhibit A, App. 21. |
| 3-19-09 | P.A. Wilson exams Brisco and diagnoses him with plantar faciatis and nasal allergies. He prescribed CTM, 4 mg. and arch supports for 180 days. Exhibit A, App. 20. |
| 4-13-09 | P.A. Wilson prescribed CTM, 4 mg. and Ibuprofen 800 mg. for backache and allergies. Exhibit A, App. 19. |
| 4-29-09 | Dr. Potter conducted a sick call exam on Brisco. He documented that Brisco stated he had no intention of losing any weight. Dr. Potter concluded that Brisco did not have a foot issue. He noted Brisco was ordered shoes with a lift on 1-8-09. Dr. Potter referred him to shoe supply and ordered that the lift be changed to 1/4 inch. Regarding the hernia, Brisco said that he refused to go for the CT scan because he wanted to wait until he is out of prison to do the surgery. Regarding the hoarseness, Brisco acknowledged that he refused to return to the ENT specialist on 2-23-09. Brisco said that a spray was ordered, but he did not get it. He also said that he is not actually chronically hoarse; he just gets hoarse occasionally when he gets a cold. Dr. Potter ordered Flonase for the nasal allegeries, discussed weight loss, and did not refer him back to the ENT specialist or to the specialist for the CT scan of the abdomen because Brisco was adamant that he would not go to either consult. Exhibit A, App. 16-18; Exhibit B, App. 54. |
| 4-30-09 | P.A. Wilson informs Brisco that Flonase was ordered for his allergies. Exhibit A, App. 15. |
| 6-4-09 | Brisco was a no-show for his appointment that was to address his complaints of pain in heels, no ankle support in shoes, and needed renewal of Simethicone. Exhibit A, App. 44. |
| 6-9-09 | P.A. Wilson referred Brisco to supply when Brisco complained that the shoes did not fit. Exhibit A, App. 14. |
| 6-18-09 | P.A. Wilson ordered Naphcon A drops for Brisco's eyes and CTM, 4mg. Exhibit A, App. 13. |
| 7-20-09 | Dr. Potter concludes that for Brisco's GERD (gastroesophogeal reflux disease), Brisco can prop himself up with extra clothes, without issuance of a wedge pillow. Exhibit A, App. 12. |
| 8-25-09 | Brisco informed nurses for first time in 2009 that he was having chest pains that started a "couple of days ago." Dr. Potter reviewed the EKG and ordered that Brisco |

|           | be transported to the hospital a.s.a.p., which was done. Exhibit A, App. 6, 45, 46; Exhibit B, App. 54-55. |
|-----------|---|
| 8-25-09   | At the local hospital, two stents were placed in the cardiac catherization lab. Exhibit A, App. 42, 43; Exhibit B, App. 54-55. |
| 8-28-09   | Upon return to Unit, Brisco again had chest pains and was sent to the Unit infirmary for evaluation. Dr. Potter admitted him. Exhibit A, App. 39-41; Exhibit B, App. 54-55. |
| 8-31-09   | Dr. Potter monitored Brisco's medications, ordered additional medications, ordered lab work, EKG, and x-rays, and discharged him from the Unit infirmary once he determined Brisco was stable. Exhibit A, App. 35-38. |
| 9-4-09    | PA Larry Doty notes that he saw Brisco in the local ER on 9-3-09. He made a referral for Brisco to see a Cardiologist. Exhibit A, App. 11, 49; Exhibit B, App. 55. |
| 9-24-09   | Brisco refused to attend his appointment to see the Cardiologist. Exhibit A, App. 3; Exhibit B, App. 55. |
| 10-17-09  | Brisco was examined in the Chronic Care Clinic by Nurse Practitioner Jeffrey Mellenthin. Exhibit A, App. 10. |
| 11-23-09  | Brisco was examined in the Physician Chronic Clinic by Dr. Potter. Dr. Potter prescribed Fluticasone Propionate nasal spray for Brisco's allergies. Exhibit A, App. 8-9. |

The medical records demonstrate that Plaintiff was seen, evaluated, and treated multiple times for a variety of medical conditions including his short leg and his heart condition. The summary judgment evidence indicates that Plaintiff was not denied medical care, rather, he disagrees with the nature of the care provided. A disagreement over the nature of medical care provided does not rise to the level of a constitutional violation. To the extent, if any, that Plaintiff states a claim for medical negligence, he cannot prevail in this lawsuit. Allegations of negligence do not present a cognizable basis for relief under the Civil Rights Act. *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding that negligence is not actionable under § 1983); *Davidson v. Cannon*, 474 U.S. 344

(1986) (same). Plaintiff has presented no evidence which could demonstrate that the actions of Defendants violated his constitutional right to medical care. The Court further finds that, base on the evidence before this Court, the medical care provided by Defendants' was objectively reasonable under the circumstances. As such, Defendants are entitled to qualified immunity from suit.

Because the summary judgment evidence demonstrates that Plaintiff was not denied medical care, his claims that medical care was denied for purposes of retaliation and racial discrimination must also fail. Similarly, Plaintiff is not entitled to relief under the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1995). To prove a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual, (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity, and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *See e.g., Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *Cole v. Velasquez*, 67 Fed. Appx. 252 (5th Cir. 2003); *Lightbourn v. County of El Paso*, 118 F .3d 421, 428 (5th Cir. 1997).

In the instant case, Plaintiff makes no claim that he was discriminated against because of his alleged disability and he has provided no evidence of any such discrimination. Rather, he simply alleges that his rights under the ADA were violated. Amended Complaint at p. 3. Absent a claim of discrimination because of his alleged disability, Brisco cannot prevail on a claim under the ADA. *See Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir.2002) (holding that a plaintiff

must show intentional discrimination base upon disability to recover under the ADA). Moreover, as Brisco has failed to show that he was denied medical care, it follows *a fortiori*, that he cannot show that Defendants discriminated against him by denying him medical care.

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden,"

*Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in the instant case establishes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons, it is ORDERED that *Defendants' Motion for Summary Judgment* is GRANTED and Plaintiff's complaint is dismissed with prejudice.

The Clerk of Court shall transmit copies of this order to Plaintiff and to Counsel for Defendants.

SO ORDERED this 13th day of December, 2010.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**